*63 Cavanagh, J.
(concurring in part and dissenting in part). I concur with the majority’s holding that a living person may not recover for a loss of an opportunity to survive under the plain language of MCL 600.2912a(2). The majority, however, also holds that the evidence concerning plaintiffs reduced life expectancy is relevant only to her potential future death. Thus, the majority fails to address whether plaintiff may recover for injuries suffered as a result of learning of her reduced life expectancy under the statute as a loss of an opportunity to achieve a better result. Because I believe that a living person may recover for injuries suffered as a result of learning of a reduction in life expectancy as a loss of an opportunity to achieve a better result and that the evidence concerning plaintiffs reduced life expectancy is relevant to whether defendant caused these injuries, I respectfully dissent.
Plaintiff asserts she may recover for her reduction in life expectancy as either a claim for loss of an opportunity to survive or loss of an opportunity to achieve a better result under § 2912a(2). I agree with the majority’s reasoning that under the plain language of § 2912a(2), a living person may not recover for a loss of an opportunity to survive. However, the statute also provides for an alternative claim, loss of an opportunity to achieve a better result. Thus, I would conclude that a living person may recover for injuries suffered as a result of learning of a reduction in life expectancy under that claim, if there is evidence that the defendant more probably than not caused the injury. I believe plaintiff satisfied this burden.
The first sentence of § 2912a(2) expressly limits recovery to injuries that have already been suffered *64 and more probably than not were caused by defendant’s malpractice. Thus, as the majority notes, the plaintiff can only recover for a present injury, not for a potential future injury. Although this precludes plaintiff from asserting a claim for loss of an opportunity to survive, it does not preclude plaintiff from asserting a claim for loss of an opportunity to achieve a better result, as the majority contends. The statute allows for recovery for injuries already suffered. In this case, the injuries already suffered are the pain and suffering, that were generated by the knowledge that plaintiff’s chances of living ten years severely decreased. Thus, plaintiff’s claim for such injuries already suffered as a result of defendant’s malpractice would satisfy the first requirement, that there be a present injury. However, the correct claim is for a loss of an opportunity to achieve a better result. Plaintiff asserted a claim for loss of an opportunity to achieve a better result on the basis of her reduced life expectancy. Therefore, the next question is whether summary disposition on this alternative claim was proper.
The second sentence of § 2912a(2) states that a plaintiff may not recover for a loss of an opportunity to survive or achieve a better result “unless the opportunity was greater than 50%. ” The statute is clear that the Legislature intended the word “opportunity” in that phrase to mean the opportunity a plaintiff had to survive or achieve a better result, absent any malpractice. Thus, the statute clearly requires that the premalpractice opportunity to survive or achieve a better result must exceed fifty percent for a plaintiff to recover.
*65 In this case, plaintiff’s expert Dr. Schapira testified that, had plaintiff’s cancer been properly diagnosed, her lowest ten-year survival rate percentage would have been fifty-five percent. Regarding plaintiff’s injury of undergoing more invasive medical procedures, Dr. Schapira testified that the delayed diagnosis caused the cancer to spread to more lymph nodes, necessitating these procedures. This injury is clearly one hundred percent attributable to defendant’s delayed diagnosis. Thus, viewing the evidence in a light most favorable to plaintiff, she submitted evidence that would allow a jury to conclude that her premalpractice opportunity to achieve a better result was greater than fifty percent, and, therefore, summary disposition of that claim was improper.
The next question to address is what damages, if any, plaintiff may recover for a reduction in life expectancy. As this opinion previously discussed, the first sentence of § 2912a(2) limits a plaintiff’s recovery to injuries already suffered and that were more probably than not caused by defendant’s malpractice. Thus, plaintiff can only recover for a present injury, not for a potential future injury. Plaintiff’s injury of having to undergo more radical treatment is a present injury, and, thus, is recoverable under the statute as an injury suffered. The additional injury plaintiff suffered as a result of defendant’s malpractice was that her chance to live beyond ten years was severely decreased. The majority asserts that plaintiff’s premalpractice chance of surviving ten years, fifty-five percent in this case, is irrelevant to whether the defendant caused the injuries suffered, i.e., pain and suffering, as a result of learning about the reduction in that chance of survival. I disagree. The only way *66 defendant caused plaintiff’s secondary injury of pain and suffering from learning of her reduced life expectancy is if defendant caused plaintiff’s primary injury, the reduction in plaintiff’s life expectancy. The secondary injury, the pain and suffering, will always be one hundred percent attributable to the primary injury, thus, we must make sure defendant caused the primary injury. To ensure defendant more probably than not caused the primary injury and, thus, the resulting secondary injury, plaintiff must prove that the primary injury meets the greater than fifty percent threshold. Evidence supporting the assertion that defendant’s negligence more probably than not caused this injury was plaintiff’s expert who opined that defendant’s failure to timely diagnose plaintiff’s breast cancer caused plaintiff’s fifty-five percent premalpractice chance to live ten years to decrease to fifteen percent. This evidence, which shows that plaintiff had a better than even chance of living ten years before defendant’s malpractice, supports a finding that defendant, not plaintiff’s cancer, more probably than not caused the injury. Plaintiff, therefore, submitted evidence that would allow a jury to conclude that her premalpractice opportunity to achieve a better result, i.e., to avoid pain and suffering after learning of her reduced life expectancy, was greater than fifty percent, and, therefore, summary disposition of that claim was improper. Thus, I would conclude that the reduction in plaintiff’s better than even chance to live ten years is a recoverable injury under the statute; however, the correct claim is for loss of an opportunity to achieve a better result, and plaintiff can only recover for the pain and suffering generated *67 by the knowledge that her chances of living ten years severely decreased.
CONCLUSION
In light of the plain language of MCL 600.2912a(2), I would conclude that a living person may not recover for a reduction in life expectancy as a loss of an opportunity to survive, but may recover for a reduced life expectancy as a loss of an opportunity to achieve a better result. The recovery for a reduction in life expectancy as a loss of an opportunity to achieve a better result claim is not based on the plaintiff’s potential future death, but is limited to the emotional damages already suffered. However, to recover for a loss of either an opportunity to survive or achieve a better result, the opportunity, absent any malpractice, must have been greater than fifty percent to ensure that defendant’s malpractice more probably than not caused the injury. The Court of Appeals applied this interpretation of § 2912a(2) and held that plaintiff’s loss of opportunity to achieve a better result claim was erroneously dismissed because she submitted evidence that, had defendants properly diagnosed her breast cancer, she would have had at least a fifty-five percent chance of surviving ten years. I would, therefore, affirm the judgment of the Court of Appeals and remand plaintiff’s case to the trial court for proceedings consistent with this opinion.
Weaver and Kelly, JJ., concurred with Cavanagh, J.